RENE L. VALLADARES
Federal Public Defender
State Bar No. 11479
LAUREN D. GORMAN
State Bar No. 11580
Assistant Federal Public Defender
201 West Liberty Street, Suite 102
Reno, Nevada 89501-2027
Telephone: (775) 321-8451
Facsimile: (775) 784-5369

Counsel for WILLIAM GILBERT EISENHOUR

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM GILBERT EISENHOUR,<br><br>Defendant. | 3:14-cr-00027-RCJ-VPC<br><br>MOTION TO SUPPRESS EVIDENCE OBTAINED BY WARRANTLESS SEARCH OF CELL PHONE INCLUDING ALL EVIDENCE OBTAINED AS FRUITS OF THE SEARCH<br><br>(Evidentiary Hearing Requested) |

<u>Certification</u>: This motion is timely filed before September 19, 2014.

Defendant William Gilbert Eisenhour, pursuant to Federal Rules of Criminal Procedure 12(b)(3) and 47 and LRC 47-1, moves to suppress all evidence seized and obtained, both directly and indirectly, including statements and tangible evidence, which are the fruits of the warrantless search of the cellular telephone seized from Mr. Eisenhour.

**STATEMENT OF FACTS**

The following is a statement of facts as contained in the discovery. The defense reserves the right to challenge these facts. The investigation began the morning of May 3, 2013 when Reno Sparks Tribal Police Officer Donald Braunworth observed Mr. Eisenhour exit the passenger side

1

of a yellow Volkswagon in the parking lot of Smoke Shop One. After the yellow Volkswagon left the parking lot, Officer Braunworth made a traffic stop on the yellow Volkswagon, identified an unnamed person and advised the unnamed person that he believed that the passenger who had just exited his vehicle was a drug dealer. The unnamed person advised that Billy Eisenhour usually has two or three grams on him a day.

The unnamed person then agreed to act as an informant (CI), accompany the officers to the police station for an interview and provide a written statement about Mr. Eisenhour. Officer Branworth then observed a black tar substance in the vehicle's center console cup holder, which later tested positive for Heroim. In his role as CI, the CI told the tribal police officers that he purchases heroin from defendant, William "Billy" Eisenhour on a daily basis. The CI agreed to make a purchase from Eisenhour later that day. The CI stated he buys $60-$100 worth of heroin from Eisenhour on a daily basis. The CI contacts Eisenhour on Eisenhour's cell phone. The CI meets Eisenhour at the Smoke Shop parking lot. The two of them then drive to a location on 6th Street in Reno where Eisenhour obtains the heroin. After the CI purchases heroin from Eisenhour, Eisenhour drives the CI back to the Smoke Shop and drops him off. Eisenhour has 2-5 grams of heroin on him at any given time. The CI contacts Eisenhour and references a sum of money. Eisenhour replies ok, normal place. This constitutes their agreement for Eisenhour to sell heroin to the CI.

On May 3, 2013, at approximately 6:30 p.m, the CI made contact with Mr. Eisenhour to purchase heroin. The CI drove to the Smoke Shop at the Indian Colony. The CI met Mr. Eisenhour who got into the passenger side of the car. Officers Braunworth and Anthony Hernandez stopped the car with the CI and Mr. Eisenhour. The officers took both the CI and Mr. Eisenhour into custody.

A search of the car and Eisenhour's person resulted in the seizure of a cigarette pack with a baggie containing black tar heroin. The officers also seized a black cellular telephone from Mr. Eisenhour's person. That evidence, along with other items seized, was booked in the evidence room.

On May 7, 2013, the Officer Crawford received evidence from the evidence technician. Included in the evidence received was the cell phone seized from Mr. Eisenhour. Officer Crawford was looking for incriminating evidence. The officer opened the cell phone and reviewed the digital

information stored on the phone. The officer found several text messages relating to possible heroin transactions. A text message at 6:22 pm confirmed a call from the CI to Eisenhour to set up a purchase of heroin.

Approximately one year later on April 1, 2014 the case was referred to the United States Attorney for prosecution.

Eisenhour now seeks suppression of the digital information stored on the cellular telephone.

## SUMMARY OF ARGUMENT

This case is controlled by the recent decision of the United States Supreme Court in *Riley v. California,* __ U.S. __, 2014 WL 2864483 (June 25, 2014). The police may not conduct a warrantless search of digital data on a cell phone that was seized from a defendant pursuant to an arrest. All evidence, including derivative evidence, must be suppressed.

## ARGUMENT

### I. *RILEY V. CALIFORNIA* REQUIRES A SEARCH WARRANT PRIOR TO SEARCHING A CELL PHONE FOR ELECTRONIC DATA.

On June 25, 2014, the United States Supreme Court ruled "We therefore decline to extend *Robinson* to searches of data on cell phones, and hold instead that officers must generally secure a warrant before conducting such a search". *Riley v. California,* __ U.S. __, 2014 WL 2864483 * 9 (June 25, 2014). Since the officer obtained the data (text messages) from Mr. Eisenhour's phone without a warrant, all information obtained as a result to that search must be suppressed.

In *Riley*, the officer seized a cell phone from Mr. Riley incident to arrest. The officer accessed information on the phone and noticed that some text messages or contacts list information could be associated with gang members. At the police station about two hours after the arrest, a detective specializing in gangs further examined the contents of the phone. The detective found videos of possible gang sparring and a photograph of Riley standing by a car suspected of being used in a gang shooting. Riley moved to suppress the evidence which motion was denied. *Id* * 4-5.

In the companion case of Brima Wurie, the officers arrested Mr. Wurie after observing an apparent drug sale. The officers seized two cell phones from Mr. Wurie at the police station. The officers noticed the phone was receiving incoming calls from a source identified as "my house".

The officers saw a woman and a baby on the phone's wallpaper, pressed a button to access the call log, pressed another button to determine the phone number associated with "my house.". The officers then used a phone directory to trace the phone number to an apartment building. After confirming information that indicated Wurie lived at the apartment, the officer obtained a search warrant. A search of the apartment resulted in the seizure of drugs, cash and a gun. *Id* 5-6. The First Circuit Court of Appeals reversed the denial of Wurie's motion to suppress ruling that obtaining the information from the cell phone was an unreasonable warrantless search. *United States v. Wurie,* 728 F.3d 1 (1st Cir. 2013).

The Supreme Court found that cell phones are different from other kinds of property seized during arrest and are therefore afforded greater protection under the Fourth Amendment. *Riley* at * 14. The police cannot look through the digital data on a cell phone absent a valid warrant. This rule includes searching a cell phone's call log. "We also reject the United States' final suggestion that officers should always be able to search a phone's call log as they did in Wurie's case." *Id* at * 18.

This case is materially indistinguishable from *Riley*. The police seized a cell phone incident to arrest and days later reviewed the call log without a warrant. Under *Riley,* this action constitutes a warrantless search and evidence obtained must be suppressed.

**II.  THE GOOD FAITH EXCEPTION DOES NOT APPLY TO NEGATE THE REMEDY OF SUPPRESSION IN THIS CASE.**

**A.  There is no binding Ninth Circuit authority ruling that accessing the phone logs of a cell phone was not a search requiring a warrant.**

The United States Supreme Court extended the good faith exception to the warrant requirement to cases in which the police conducted a warrantless search in reliance upon binding appellate precedent. *Davis v. United States,* ___ U.S. __, 131 S.Ct. 2419 (2011). There is no such binding appellate precedent in this case for the police to rely upon. No Ninth Circuit case explicitly rules that digital data on a cell phone can be searched incident to arrest. The Ninth Circuit case law addressing the issue approves police practices in which the police obtain a warrant or consent. *See, e.g. United States v. Grant,* 682 F.3d 827, 829 (9th Cir. 2012)(approving police practice of obtaining warrant to search cell phone which was in police custody).

*United States v. Lopez-Cruz,* 730 F.3d 803 (9th Cir. 2013)(police obtain consent to search cell phones found in car but answering incoming phone calls exceeds the scope of that consent).

### B. The search incident to arrest exception does not apply to a search conducted days later after the evidence has been booked into the evidence room.

A search incident to arrest must be conducted contemporaneously with the arrest. *New York v. Belton,* 453 U.S. 454 (1981). The justifications for the search incident to arrest are absent when the search is remote in time from the arrest. *United States v. Chimel,* 395 U.S. 752 (1969). A search of luggage was not lawful as a search incident to arrest when the search was conducted 90 minutes after the arrest when the evidence had already been transported to the federal building. *United States v. Chadwick,* 433 U.S. 1 (1977). In this case, the cell phone was searched days after the arrest when the property was stored in the police evidence room. None of the justifications for a search incident to arrest are present. There is no reason the police could not have obtained a warrant to search. The search of the cell phone cannot be justified as a search incident to arrest.

Controlling Ninth Circuit law does not authorize a search incident to arrest when the search is not contemporaneous with the arrest. The court uses a two part test: 1) was the item within the arrestee's immediate control when arrested and 2) did events after the arrest make the search unreasonable. *United States v. Maddox,* 614 F.3d 1046, 1048 (9th Cir. 2010). In *Maddox,* the intervening acts of handcuffing the defendant and placing him in the back of the police car, made the subsequent search of his key chain unreasonable. In *United States v. Ramos-Oseguera,* 120 F.3d 1028 (9th Cir. 1997), the Court of Appeals ruled that towing the car to the police station was an intervening act that made the subsequent search of the car at the station unreasonable unless supported by a warrant. The seizure and retention of the cell phone in police custody are also intervening acts which make the failure to obtain a warrant unreasonable. There is no good faith reliance upon controlling precedent for the search in this case.

///

///

///

**CONCLUSION**

Under *Riley v. California,* the police cannot search a cell phone incident to arrest. There is no good faith exception under controlling authority to justify the search. The search was without a warrant and not justified by any exception to the warrant requirement. All evidence must be suppressed.

ORDER

IT IS SO ORDERED this 25th day of August, 2014.

_____
ROBERT C. JONES